**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT HUANG, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16-cv-9566 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| FLUIDMESH NETWORKS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Fluidmesh Networks, LLC's motion [23] to dismiss Plaintiff Robert Huang's complaint for lack of jurisdiction and for failure to state a claim. For the reasons set forth below, Defendant's motion [23] is granted. Plaintiff is given until August 18, 2017 to file an amended complaint consistent with this opinion.

**I.    Background[1]**

This case involves the termination of Plaintiff Robert Huang's employment with Defendant Fluidmesh Networks, LLC over alleged whistleblowing activities. The complaint invokes the Court's diversity jurisdiction, alleging that Plaintiff is a citizen of Taiwan,[2] Defendant is a Delaware corporation with its principal place of business in Illinois, and the amount in controversy exceeds $75,000. See [1] at ¶¶ 1-3.

According to the complaint, Defendant sells certain products to Cisco Systems, Inc. ("Cisco")—a publicly traded company—for resale. See *id*. at ¶¶ 6-7. Plaintiff began working

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pled allegations set forth in Plaintiff's Complaint, see *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (citation omitted, and considers documents attached to a complaint, such as contract documents. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (citing Fed. R. Civ. P. 10(c)).

[2] The Court notes that Plaintiff's response brief states that he is a "citizen of California, who worked in Taiwan," see [27] at 1; however, whether Plaintiff was a citizen of Taiwan or California does not affect the Court's analysis.

for Defendant in December 2011 as a "Supply Chain and Manufacturing Manager," and he performed his work "remotely from his homes in Taiwan and California." *Id*. at ¶ 5. Plaintiff also asserts that he was a "subcontractor of Cisco," presumably at the same time he worked for Defendant, although the complaint is not clear on the details of this arrangement. *Id*. at ¶ 13.

In February 2013, Defendant's Chief Executive Officer, Umberto Malesci, wrote to Plaintiff at a Taiwan address, offering him (1) a raise in salary, (2) a bonus, and (3) a 1% profit interest in a new, wholly owned subsidiary of Defendant—Bitlomat, LLC ("Bitlomat"). Malesci stated that the interest "shall vest linearly over the five years starting March 1, 2013 as long as you are engaged as a full-time employee of the [Defendant]." The offer letter noted that its terms were subject to approval by Defendant's Board of Managers, and it was signed by both Malesci and Plaintiff. See [1-1].

Plaintiff asserts that, following this letter, Defendant provided a contract "detailing the terms and conditions" of the profit interest. [1] at ¶ 22. The contract, which Plaintiff attached to the complaint, see [1-2], is titled an "Interest Grant Agreement" ("Agreement"), and Bitlomat and Plaintiff are listed as the contracting parties. The document appears to have contemplated an effective date in November 2013; neither Plaintiff nor an agent of Bitlomat executed the document. See *id*. at 1, 12.

Years later, in January 2016, Plaintiff alleges that Defendant's Chief Technology Officer, Alessandro Erta, "told a third party that Cisco intended to purchase" Defendant. [1] at ¶ 8. Believing the information to be false and also having the potential to influence Cisco's stock price, Plaintiff reported the incident internally to his immediate supervisor, who happened to be Erta. Plaintiff contends that he also reported the incident to Erta's supervisor. According to Plaintiff, he told both individuals that he believed the disclosure of information about Cisco's

2

purchase of Defendant was "illegal" and he "indicated that he would report the rule violation to the appropriate authorities." [1] at ¶ 11. Plaintiff does not allege that he reported the incident to anyone else.

On February 19, 2016, Defendant terminated Plaintiff's employment. Plaintiff asserts that Defendant "provided no basis for the termination," *id.* at ¶¶ 15-16; he alleges that he was fired for "reporting securities law violations," and he cites to 18 U.S.C. § 1514A, which he states prohibits "retaliation against employees of public companies" that report "certain types of allegedly unlawful conduct." See *id.* at ¶¶ 12, 17.

In October 2016, Plaintiff filed a three-count complaint [1], asserting a violation of the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.* (Count I), *id.* ¶¶ 26-28; retaliatory discharge (Count II), *id.* ¶¶ 30-32; and seeking a declaration that his ownership interest in Bitlomat is fully vested (Count III), *id.* ¶¶ 34-36. Defendant filed a motion to dismiss all three claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that (1) Plaintiff does not have standing to pursue his Illinois employment law claims and (2) all three counts fail to state a claim upon which relief can be granted. Defendant has provided a declaration by Malesci as support for its 12(b)(1) arguments. According to Malesci, who, along with Erta, is based in Italy, Plaintiff was responsible for developing Defendant's business relationships in China. Plaintiff was not responsible for developing business relationships in the United States, his employment was never based in Illinois, and he never physically worked in or traveled to Illinois as part of his employment with Defendant. In addition, Malesci states that the "January 2016 meeting referenced in the Complaint was held in Taiwan." See [24-3] (Declaration of U. Malesci) at ¶¶ 2-6.

## II.     Legal Standard

"For purposes of a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor." *Mutter v. Madigan*, 17 F. Supp. 3d 752, 756 (N.D. Ill. 2014).  A Rule 12(b)(1) motion challenges federal subject matter jurisdiction.  In ruling on the motion, the district court may look beyond the jurisdictional allegations alleged in the complaint and take into consideration whatever evidence has been submitted on the issue to determine if subject matter jurisdiction exists.  *County of Cook v. HSBC N. Am. Holdings Inc.*, 136 F. Supp. 3d 952, 957-58 (N.D. Ill. 2015).  The burden is on the party asserting jurisdiction to demonstrate that it exists. *Id.*

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint.  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'"  *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole.  See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).  Still, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In deciding a Rule 12(b)(6) motion, the court may consider documents attached to a complaint, such as contract documents.  *Bible*, 799 F.3d at 639.

**III.   Analysis**

    **A.   Illinois Whistleblower Act**

According to Plaintiff, by firing him following his report of "securities law violations," Defendant violated the Illinois Whistleblower Act ("IWA"). The purpose of the IWA is "to protect employees from adverse employment actions in retaliation for reporting or refusing to engage in unlawful conduct by their employers." *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 99. Specifically, under the IWA, an employer may not retaliate against an employee:

- "who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation," 740 ILCS 174/15(a);

- "for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation," 740 ILCS 174/15(b);

- "for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation," 740 ILCS 174/20;

- through an act or omission "materially adverse to a reasonable employee" because "of the employee disclosing or attempting to disclose public corruption or wrongdoing," 740 ILCS 174/20.1; or

- by threatening "any employee with any act or omission if that act or omission would constitute retaliation against the employee under this Act," 740 ILCS 174/20.2.

Defendant argues that the complaint fails to state a claim for a violation of either section 15 or section 20 of the IWA. The Court notes that Plaintiff's complaint fails to cite the specific section(s) of the IWA that he believes Defendant to have violated.

The Court agrees that the complaint fails to state a claim under 740 ILCS 174/15(a) and 740 ILCS 174/15(b), because it alleges only that Plaintiff reported the alleged securities law violations internally. See [1] at ¶¶ 11, 17. "Under the IWA, there is no cause of action where an

5

employee reveals information only to his or her employer." *Zelman v. Hinsdale Twp. High Sch. Dist. 86*, 2010 WL 4684039, at *2 (N.D. Ill. Nov. 12, 2010) (citing cases); cf. *Sweeney v. City of Decatur*, 2017 IL App (4th) 160492, ¶ 19 (even where employer may be considered law-enforcement agency, "section 15(b) of the Whistleblower Act does not protect an employee who simply notes the impropriety of conduct with the alleged wrongdoer, as that does not constitute the disclosure of information under the Whistleblower Act."). Although the complaint states that Plaintiff had "indicated" to his supervisors that he would report the alleged violation "to the appropriate authorities," the complaint fails to allege that Plaintiff actually did so.

Plaintiff acknowledges case law holding that the IWA "does not come into play" in the absence of a report of illegal activity to government officials. See [27] at 7 (citing *Stiles v. Int'l BioResources, LLC*, 726 F. Supp. 2d 944 (N.D. Ill. 2010)). In an effort to overcome this, Plaintiff argues that, because the IWA does not define the term "disclosing," he can state a claim by alleging that he made a disclosure "through a third party such as his supervisor as was done here." *Id*. at 8. The Court is not persuaded by Plaintiff's argument that he made an IWA-qualifying disclosure *through* Erta. Plaintiff cites *Michael v. Precision Alliance Grp., LLC*, 2011 IL App (5th) 100089 in support of his theory, but that case (1) did not involve the IWA and (2) is distinguishable from the situation here. In *Michael*, three employees of an agricultural supply business noticed that the business was selling bags of seeds with lower weights than labeled and charged. One employee reported the problem internally, but it was not fixed. A co-worker, who had been terminated for reasons irrelevant here but who also had known about the underweight-bag issue, called one of the three employees and said he was going to call the state, and the employee offered encouragement. All three employees then provided their former co-worker with underweight seed bag information to relay to the state, which ultimately led to an

investigation of the business. After the employees were let go, they filed a complaint for common law retaliatory discharge. In analyzing whether the employees had engaged in a "protected activity" for purposes of the retaliatory-discharge analysis, the Illinois Appellate Court looked to the IWA for guidance, and found that it provided relatively little help, although the court opined in dicta that disclosure to a third party "arguably" could be covered by the act. "Regardless, the common law is separate from the Whistleblower Act." *Id*. at ¶ 22. Ultimately, the Illinois Appellate Court found that the employees' indirect report raised sufficient facts to survive summary judgment on their common law claim. Not only does *Michael* not hold that disclosure to a government agency through a third party satisfies the IWA, but even if it did, Plaintiff's report to his supervisor does not even come close to the third-party reporting scenario presented by *Michael*.[3]

Turning next to 740 ILCS 174/20, the complaint states that Defendant was prohibited from retaliating against or discharging Plaintiff for "his opposition to or refusal to follow [Defendant's] unlawful policies and practices of sharing insider information," and that his February 19, 2016 termination was unlawful retaliation based on "his legally protected conduct." See [1] at ¶¶ 25-28. "In order to sustain a cause of action under the [Illinois Whistleblower] Act, a plaintiff must establish that (1) he refused to participate in an activity that would result in a violation of a state or federal law, rule, or regulation, and (2) his employer retaliated against him because of that refusal." *Sardiga v. Northern Trust Co*., 409 Ill. App. 3d 56, 61 (1st Dist. 2011) (citing 740 ILCS 174/20). Plaintiff's vague and conclusory allegations that Defendant maintained a policy or practice of sharing insider information do not suffice to state a claim under this section. Setting aside for the moment whether the sharing of insider information as

---

[3] Plaintiff makes other arguments regarding the viability of internal reporting, some involving *Michael*, apparently in support of his IWA claim, but he confuses the requirements of a statutory IWA claim with the different elements of a common-law retaliatory discharge claim.

7

alleged here itself is an activity that violates state or federal law, Plaintiff has not set forth any allegations that he "refused" to engage in any such activity. See *id*. at 64 (merely complaining about or questioning an activity—as opposed to actually refusing to participate in it—is not sufficient to entitle a plaintiff to relief under the IWA); see also *Robinson v. Alter Barge Line, Inc.*, 513 F.3d 668, 670 (7th Cir. 2008); *Duncan v. Casey's Retail Co.*, 2013 WL 5835706, at *2 (S.D. Ill. Oct. 30, 2013) (complaint was "wholly insufficient to withstand dismissal" where it did not sufficiently allege that plaintiff refused to work an event without compensation or even that working the event without compensation would result in violation of a law or regulation). Nor did Plaintiff refuse to work because of the illegal policies and practices or for any other reason. See *Robinson*, 513 F.3d at 670. Plaintiff has not alleged a claim under 740 ILCS 174/20.

Finally, Plaintiff did not set forth adequate allegations to state a claim under 740 ILCS 174/20.1 because he has not alleged anything to do with *public* corruption or wrongdoing, or 740 ILCS 174/20.2 because he has not alleged that Defendant threatened him in any way. For these reasons, Plaintiff's IWA claim fails.

As an additional basis for dismissal, Defendant argues that Plaintiff lacks standing to bring suit under the IWA because the statute does not apply extraterritorially and Plaintiff has not alleged (and cannot allege) that any of the events supporting his claim occurred in Illinois. See [24] at 6-8, 12-14; see generally [24-3]. In response, Plaintiff argues that he has standing to bring suit under the IWA because it "applies to all Illinois employers regardless of the location of the terminated employee." [27] at 5-6.

State laws presumptively lack extraterritorial reach. Illinois is no exception to this rule: a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184-

85 (2005) (citations omitted); *Graham v. Gen. U.S. Grant Post No. 2665, V. F. W.*, 43 Ill. 2d 1, 6 (1969) ("Our past decisions have established the rule that when a statute * * * is silent as to extraterritorial effect, there is a presumption that it has none."). For this reason, courts have found Illinois statutes, including those in the employment context, inapplicable to redress injuries that occurred outside of the state in the absence of clearly expressed legislative intent that such injuries should be covered. For example, in *Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998), the Seventh Circuit held that the Illinois Wage Payment and Collection Act ("IWPCA") does not have an extraterritorial reach, and therefore affirmed the dismissal of the claim of an employee who did not perform any work in Illinois. Similarly, a court in this district concluded that the Illinois Minimum Wage Law does not apply extraterritorially to out-of-state workers who alleged injury outside of Illinois. See *Wooley v. Bridgeview Bank Mortgage Co., LLC*, 2015 WL 327357, at *3 (N.D. Ill. Jan. 23, 2015).

Outside of the employment context, the Illinois Supreme Court reached the same conclusion with regard to the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), given the demonstrated lack of intent to make that statute applicable to fraudulent transactions which take place outside of Illinois. *Avery*, 216 Ill. 2d at 185; see also *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009) ("ICFA did not create a cause of action for fraudulent acts that had little or no connection to the state of Illinois."); *Super Pawn Jewelry & Loan, LLC v. Am. Environmental Energy, Inc.*, 2013 WL 1337303, at *7 (N.D. Ill. Mar. 29, 2013) (plaintiff, an Illinois businessman, lacked standing to sue under the ICFA for a fraud that was allegedly perpetuated in California by a business incorporated in Nevada). To highlight a case on the other side of this analysis, the Court notes the Illinois Supreme Court's decision in *Mahoney v. Indus. Comm'n*, 218 Ill. 2d 358 (2006). There the court found the Illinois Workers'

9

Compensation Act remedies injuries sustained outside of Illinois under certain circumstances. *Id.* at 364, 374. The court relied on the Act's definition of "employee" (among other things, "[e]very person in the service of another under any contract of hire, express or implied, oral or written, *including persons whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois*") and the clear legislative intent supporting this conclusion, as evidenced by the history of the act. *Id.* at 364-65 (noting that the Workers' Compensation Act had been amended in 1925 to expressly provide for its application to injuries occurring outside the state when the contract for hire is made within Illinois); see 820 ILCS 305/1(b)(2).

This Court has not located—and the parties have not cited—any cases interpreting the territorial reach of the IWA. The IWA does not contain language expressing the legislature's clear intent for it to have extraterritorial effect to redress injuries suffered outside of Illinois. See *Stiles*, 726 F. Supp. 2d at 949-50 (the clearest way for a legislature to express its intent is the language that it adopts) (citing *Gallagher v. Union Square Condo. Homeowner's Ass'n*, 397 Ill. App. 3d 1037, 1041 (2d Dist. 2010)). Plaintiff points to the definitions of "employer" and "employee" in the statute[4] and argues that the absence of language limiting IWA claims to

---

[4] 740 ILCS 714/5: Definitions. As used in this Act:

"Employer" means: an individual, sole proprietorship, partnership, firm, corporation, association, and any other entity that has one or more employees in this State, including a political subdivision of the State; a unit of local government; a school district, combination of school districts, or governing body of a joint agreement of any type formed by two or more school districts; a community college district, State college or university, or any State agency whose major function is providing educational services; any authority including a department, division, bureau, board, commission, or other agency of these entities; and any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees.

"Employee" means any individual who is employed on a full-time, part-time, or contractual basis by an employer. "Employee" also includes, but is not limited to, a licensed physician who practices his or her profession, in whole or in part, at a hospital, nursing home, clinic, or any medical facility that is a health care facility funded, in whole or in part, by the State.

"Illinois-based employees" "means there is no citizenship requirement for employees under the IWA." See [27] at 5-6. The Court is not persuaded that the definition of "employee" in the IWA expands its application to retaliation suffered by all employees of a statutorily defined employer across the globe. In fact, reading the statute as Plaintiff suggests would be inconsistent with the long standing rule in Illinois against extraterritorial effect absent express intent by the legislature. *Avery*, 216 Ill. 2d at 184-85. For all of these reasons, the Court concludes that the IWA does not apply extraterritorially.

For Plaintiff to state a claim under the IWA, he must allege not only that he was retaliated against after reporting to a law enforcement agency or refusing to participate in a particular activity, but also that the retaliation has a connection to Illinois. The only Illinois-related allegation in Plaintiff's IWA claim is that Defendant has its principal place of business in the state. See [1] at ¶ 2. But this fact alone has been found insufficient to state a claim under other Illinois laws without extraterritorial reach. See, *e.g.*, *Crichton*, 576 F.3d at 397 (fact that defendant maintained a "home office" in Illinois was not enough to confer standing under ICFA); *Glass*, 133 F.3d at 1000 (IWPCA did not apply extraterritorially to non-resident plaintiff who performed no work in Illinois, even though "the employer defendants have their principal places of business in Illinois, and are therefore 'employers * * * in this State'"); *Wooley*, 2015 WL 327357, at *3 (although plaintiff alleged that defendant maintained its principal place of business in Illinois and created policies within Illinois that were applied to workers in other states, the "overwhelming majority of circumstances" related to the violations of plaintiffs' rights took place in Kansas).[5] Plaintiff does not advance any arguments for why the same rationale should not control here. Further, Plaintiff does not allege that he ever worked in Illinois or that

---

[5] Plaintiff does not allege or argue that his employment contract with Defendant has a choice of law provision selecting Illinois law. Even if he had, the court in *Wooley* also held that an Illinois choice-of-law provision in an employment contract could not affect the territorial limitation of an Illinois statute.

11

any of the events supporting Plaintiff's IWA claim occurred in Illinois. Cf. *Baxi v. Ennis Knupp & Assocs., Inc.*, 2011 WL 3898034, at *14-*15 (N.D. Ill. Sept. 2, 2011) (denying motion to dismiss IWPCA claim where resident of India argued and alleged that he performed some work in Illinois). In fact, Defendant submits that (1) Plaintiff's employment was not based in Illinois, (2) Plaintiff never performed work in Illinois, (3) the January 2016 meeting where the disclosure was made occurred in Taiwan, and (4) Defendant's employees Erta and Malesci both were based in Italy. See [24-3]. Based on these considerations, the Court agrees that the absence of any meaningful connection to Illinois provides an additional basis for dismissing Plaintiff's IWA claim.

### B. Retaliatory Discharge

In Count II, Plaintiff brings retaliatory discharge claim against Defendant alleging that his employment was terminated "as a result of, or in retaliation for, internally reporting securities law violations," in violation of Sarbanes–Oxley's ("SOX") whistle-blower provision, 18 U.S.C. § 1514A and "public policy." [1] at ¶¶ 30-32. Plaintiff's complaint and response brief are not entirely clear as to the specific violation alleged in this count, but, as the Court reads the filings, Count II appears to allege an Illinois common law claim using SOX as a basis for Plaintiff's allegations that he engaged in a protected activity (instead of asserting both common law *and* SOX claims in this single count).[6] As currently pled, the facts of Plaintiff's retaliatory discharge claim are too attenuated to state a claim.

---

[6] In any event, SOX clearly requires the filing of an administrative charge as a prerequisite to bringing a civil suit. See 18 U.S.C. § 1514A(b); *Nieman v. Nationwide Mut. Ins. Co.*, 706 F. Supp. 2d 897, 907 (C.D. Ill. 2010) (court lacked jurisdiction to adjudicate plaintiff's SOX claims where he did not follow the prescribed administrative procedures). Before an employee may assert a cause of action in federal court under SOX, the employee must file a complaint, within ninety days after the date on which the violation occurs, with the Occupational Safety and Health Administration ("OSHA") and afford OSHA an opportunity to resolve the allegations administratively. See *Willis v. VIE Financial Group, Inc.*, 2004 WL

In Illinois, the default rule is that an employee serves at the will of his employer, who may discharge him "for any reason, or no reason" at all. *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 32 (1994); *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 505 (1991). The common-law tort of retaliatory discharge is a "limited and narrow" exception to employment at will. *Turner v. Mem'l Med. Ctr.*, 233 Ill. 2d 494, 500 (2009). Under Illinois common law, the retaliatory-discharge tort is available to a person whose whistleblowing leads to the termination of his or her employment. *Palmateer v. Int'l Harvester Co.*, 85 Ill. 2d 124, 130 (1981). To establish a claim for retaliatory discharge, Plaintiff must allege that: (1) he was discharged; (2) his discharge was in retaliation for legally-protected activities; and (3) his discharge contravened a clearly-mandated public policy of the State of Illinois. *Bourbon v. Kmart Corp.*, 223 F.3d 469, 472 (7th Cir. 2000) (citing *Hartlein v. Ill. Power Co.*, 151 Ill. 2d 142, 159 (1992)).

With regard to the third element, violation of a clearly mandated public policy of the State of Illinois, the Illinois Supreme Court has stated, "public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions." *Palmateer*, 85 Ill. 2d at 130; see also *Sutherland v. Norfolk S. Ry. Co.*, 356 Ill. App. 3d 620, 627 (1st Dist. 2005) (a "whistleblower must allege that his or her discharge violated a clear mandate of public policy because the reported wrongful conduct or unsafe condition affected the health, safety or welfare of Illinois residents as a whole") (citing *Palmateer*, 85 Ill. 2d at 130). Here, Plaintiff has pled the following: "At all relevant times herein, there was 18 U.S.C. § 1514A and public policy that prohibited [Defendant] from terminating [Plaintiff] for reporting securities law violations." [1] at ¶ 30. Defendant argues that because the events surrounding Plaintiff's discharge lack

---

1774575, at *3 (E.D. Pa. Aug. 6, 2004) (citing 18 U.S.C. § 1514A(b)(1)(A); 29 C.F.R. § 1980.103); see also 18 U.S.C. § 1514(b)(2)(D). Plaintiff has not alleged that he complied with this procedure.

connection to Illinois, Plaintiff's retaliatory discharge claim should be dismissed for lack of standing and failure to state a claim. See [24] at 7-9, 12-14. Plaintiff fails to respond directly to this argument beyond stating that Defendant is an Illinois corporation that violated "federal law and the public policy of its state of incorporation by terminating its employee." See [27] at 3. The Court agrees that the allegations of the existing complaint are insufficient to plead that Plaintiff's termination violated a clearly mandated public policy of the State of Illinois.

First, it is well established that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and Plaintiff's bare allegation that "public policy" prohibited his firing does not clear this pleading hurdle. Second, this allegation, as written, cannot support Plaintiff's claim. Although Illinois may recognize a cause of action for an employee who reports corporate fraud or mismanagement, see *Johnson v. World Color Press, Inc.*, 147 Ill. App. 3d 746, 750-51 (1st Dist. 1986) (allowing a claim based on an employee's disagreement with accounting practices to go forward), instead of alleging that Illinois has a public policy in preventing the type of corporate disclosure Plaintiff alleges to have reported, he circuitously alleges that his claim for improper discharge is supported by public policy against improper discharge.[7] Further, similar to his IWA claim,

---

[7] The Court further notes that the Seventh Circuit has found that Illinois is unlikely to recognize a cause of action in this context "when a close look at the allegations shows that no corporate misconduct has been described." *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 916-17 (7th Cir. 2006); see also *Williams v. Merle Pharmacy, Inc.*, 2015 WL 6143897, at *7 (C.D. Ill. Oct. 19, 2015) ("[W]here the employer's alleged underlying conduct does not implicate the violation of any law, the justification for applying the tort of retaliatory discharge dissipates and the claim is not cognizable."). Although Plaintiff alleges that the private potential purchase information "would have a material effect on the stock price of Cisco," [1] at ¶ 10, which appears to indicate that Plaintiff had insider trading concerns, he does not allege that Erta breached a duty of trust and confidence not to disclose such information, that Erta received any personal benefit from the disclosure, or that any actions were taken by anyone on the basis of this information, even on information or belief. See *Salman v. United States*, 137 S. Ct. 420, 423 (2016) ("Section 10(b) of the Securities Exchange Act of 1934 and the Securities and Exchange Commission's Rule 10b–5 prohibit undisclosed trading on inside corporate information by individuals who are under a duty of trust and confidence that prohibits them from secretly using such information for their personal advantage. * * * These persons also may not tip inside information to others for trading."). In addition, the parties dedicate

14

Plaintiff's retaliatory discharge claim fails to allege any connection to Illinois—and to Illinois public policy—beyond Defendant's presence in the state. In similar situations, courts have found an Illinois retaliatory-discharge claim inapplicable. For example, in *Osikowicz v. Nw. Airlines, Inc.*, 1994 WL 23153 (N.D. Ill. Jan. 27, 1994), the court held that an employee's discharge did not contravene Illinois public policy when the misdeeds he reported all occurred outside the state, because such acts did not generally affect the citizens of Illinois. *Id.* at *3 (noting at the time that there were no reported decisions involving an employee who was fired for reporting improper activities that took place outside of Illinois); cf. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 916 (7th Cir. 2006) (finding a strong case for the application of Georgia law instead of Illinois law where plaintiff was domiciled in Georgia, conduct leading to his discharge occurred outside of Illinois, and actual discharge occurred outside of Illinois). Here, too, Plaintiff's allegations do not establish that the reported activities had any connection to or effect on Illinois. In light of the above and recognizing that the limited and narrow construction of the tort in Illinois law, the Court dismisses Plaintiff's retaliatory discharge claim.

### C. Declaratory Judgment

Plaintiff brings Count III pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, which provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction * * * any court of the United States * * * may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could

---

much of their briefing to whether SOX applies to Plaintiff's situation for another reason—because (1) Defendant is not a publicly traded company and (2) Plaintiff has failed to plead sufficient facts to allege that Defendant's sales relationship with Cisco confers SOX protection to Plaintiff, particularly where he does not allege that his internal report involved any wrongdoing by Cisco, either on its own or through Defendant. Defendant also makes, in passing, an argument that SOX does not apply extraterritorially and therefore would not apply to an individual such as Plaintiff, a non-citizen working abroad. See [24] at 8 n.6 (citing *Carnero v. Boston Sci. Corp.*, 433 F.3d 1 (1st Cir. 2006)). The Court declines to address these arguments, having found that Plaintiff's retaliatory discharge claim fails for other reasons.

be sought." 28 U.S.C. § 2201(a). "The Declaratory Judgment Act provides that a court *may* declare the rights and other legal relations of any interested party, * * * not that it must do so." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (emphasis in original, internal quotations and citation omitted). A court has broad discretion in deciding whether to exercise jurisdiction over claims for declaratory relief.

A "case of actual controversy" for purposes of § 2201(a) means a case or controversy as those terms are employed in Article III of the Constitution delimiting the scope of the federal judicial power. U.S. Const. art. III, § 2, cl. 1. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.*, 549 U.S. at 127 (citation omitted).

"In the context of disputes between parties to a contract, the declaratory judgment remedy is intended to provide a means of settling an actual controversy before it ripens into a violation of the civil or criminal law, or a breach of a contractual duty." *Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 687 F.3d 1076, 1081 (8th Cir. 2012) (quotations and citation omitted). In these situations, relevant Article III considerations include whether the contractual dispute is real, in the sense that it is not factually hypothetical; whether it can be immediately resolved by a judicial declaration of the parties' contractual rights and duties; and whether "the declaration of rights is a *bona fide* necessity for the natural defendant/declaratory judgment plaintiff to carry on with its business." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002).

Through his complaint, Plaintiff alleges that "[p]ursuant to the [Interest Grant] Agreement, [Plaintiff's] interest was fully vested upon termination without cause." [1] at ¶ 24.

16

In Count III, Plaintiff simply asserts that an actual controversy exists between the parties concerning whether his profit interest is fully vested, and he seeks a declaration from the Court that it is. See *id*. at ¶ 36. Defendant has moved to dismiss this count, arguing that the Interest Grant Agreement contemplated a four-year vesting period and therefore the unsigned contract [1-2] is unenforceable under the Illinois Frauds Act, 740 ILCS 80/1 *et seq*. See [24] at 16-18. Plaintiff counters that certain accelerated vesting provisions contained in the Interest Grant Agreement rendered performance (*i.e.*, full vesting) possible within one year and thereby remove the Agreement from the Frauds Act's writing requirement. See [27] at 10-11.

Before considering the parties' arguments regarding the enforceability of the Interest Grant Agreement pursuant to the Frauds Act, the Court concludes that the complaint and attachments thereto fail to sufficiently set forth the existence of a valid contract. Specifically, Count III requests a declaration that Plaintiff's interest was fully vested pursuant to the Interest Grant Agreement (as opposed to the offer letter). But the complaint fails to sufficiently allege the elements of contract formation with regard to this contract: offer, acceptance, and consideration. At most, it alleges that Defendant tendered an offer to Plaintiff and the general terms of that offer. See [1] at ¶ 22 ("Fluidmesh tendered a more detailed interest Grant Agreement to Huang * * * detailing the terms and conditions of the Interest Grant."), ¶ 23 ("Pursuant to the Agreement, Huang was granted a 1% interest in Bitlomat, LLC, a wholly owned subsidiary of Fluidmesh."). The complaint does not allege that Plaintiff accepted the offer, and the Interest Grant Agreement attached as Exhibit B to the complaint also fails to indicate acceptance, as it is unsigned by both parties to the contract—Plaintiff and Bitlomat. Further, the complaint does not otherwise allege the existence of a contractual relationship between Plaintiff and Bitlomat or conduct consistent with the terms of the draft Interest Grant

Agreement. Accordingly, Plaintiff has failed to set forth sufficient allegations to plead that the Interest Grant Agreement is a valid contract, and the Court cannot make a declaration concerning the performance of this document. For this reason alone, the complaint does not adequately plead that an actual Article III case or controversy existed over the profit interest at the time Plaintiff filed the complaint, and the Court dismisses Count III.[8]

## IV. Conclusion

For the foregoing reasons, the Court grants Defendant's motion to dismiss Plaintiff's complaint [23]. Plaintiff shall have until August 18, 2017 to file an amended complaint if he can do so consistent with this opinion.

Dated: July 18, 2017

Robert M. Dow, Jr.
United States District Judge

---

[8] Even if the complaint had adequately set forth the validity and enforceability of the Interest Grant Agreement, Count III suffers from additional infirmities, which the Court will mention briefly. By the terms contained in the Interest Grant Agreement [1-2], any contemplated contract would have involved Bitlomat and Plaintiff. Accordingly, in a claim based on the terms of this particular agreement or seeking enforcement thereof, Bitlomat may be a necessary party (unless Defendant can adequately represent Bitlomat's interest—a topic on which the Court does not express any opinion). *Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 484 (7th Cir. 2001) (contracting party "is the paradigm of an indispensable party") (citation and internal quotations omitted); *Burger King v. Am. Nat. Bank & Tr. Co.*, 119 F.R.D. 672, 675 (N.D. Ill. 1988) ("If the absent party has a legally protected interest in the subject matter of the action—*i.e.*, he is a party to a contract at issue—he falls squarely within the terms of Rule 19(a)(2)."). Further, although the complaint alleges that an "actual controversy between the parties exists concerning whether [Plaintiff's] ownership interest in Bitlomat, LLC is fully vested," *id.* at ¶ 36, it fails to set forth any allegations that Plaintiff's profit interest is in dispute, so as to necessitate an immediate declaration of rights.